

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-12-00311-CV
_____

GABRIEL BAROCIO AND ELISABETH BAROCIO, APPELLANTS

V.

GENERAL ELECTRIC COMPANY AND RANDY BRITT
D/B/A BRITT HEATING & AIR, APPELLEES

On Appeal from the 169th District Court
Bell County, Texas
Trial Court No. 239,013-C; Honorable Gordon Adams, Presiding

January 3, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellants, Gabriel and Elisabeth Barocio, appeal the entry of a take-nothing judgment following the granting of a "no evidence" summary judgment in favor of Appellees, General Electric Company and Randy Britt d/b/a Britt Heating & Air, on the Barocios' claim under the Deceptive Trade Practices Act for breach of implied warranty. We affirm.

**BACKGROUND**

In early 2003, the Barocios began building a new house in Bell County, Texas. In May, they purchased a heating and air conditioning system (hereinafter, simply the "system") from Britt Heating & Air containing a blower motor manufactured by General Electric. Britt installed the system but did not connect it to the house's electrical wiring. Leon Brown was hired to do the electrical work for the Barocios' house and installed all the electrical wiring. In December of 2003, Britt started the system and the Barocios moved into their house. Shortly thereafter, Britt returned to adjust the system's thermostat. From January 2004 until December 2008, the Barocios did not experience any problems with the system.

In late December 2008, Elisabeth noticed the house lights flickered and dimmed when the system was activated. No one was called to check the house's wiring or the system. On New Year's Eve, Elisabeth heard the system activate and saw the lights flicker. She then heard a loud pop. Approximately ten minutes later, she walked out the back door and heard a sizzling sound. When she looked up, she saw the roof was afire. The fire department was called, the fire was extinguished, and the roof collapsed.

Bell County's Fire Marshal, Steve Casey, arrived after the system had been removed from the attic area and hauled off—all that remained was the system's blower motor. When he checked the house's breaker box to see if a short in the system had tripped a breaker, he could not tell whether the breaker had been tripped because all breakers had been turned off before he arrived.[1] On January 6, 2009, Casey issued a

_____

[1]Casey testified on deposition that, ninety percent of the time, if an electrical charge is going

report indicating the fire's point of origin was the "[h]eating unit" and the ignition source was "[e]lectrical." His report concluded the fire's cause was a "[m]alfunctioning ac/heating fan motor." He noted the heating unit's electric motor "was frozen and heavily charred, indicating to [him] that the electric motor had malfunctioned shorted out and caught fire. This intern [sic] caught the house on fire in the roof area."

Elisabeth's sister, Elsie, was also building a house at the same time the Barocios were building their house. Both used Leon Brown to wire their houses. After the fire, Gabriel learned Elsie's wiring was redone because the wire used by Brown was not the proper size.

In March 2009, the Barocios filed their *Original Petition* against Rheem Manufacturing Company[2] and Britt alleging an action, among others, under the Deceptive Trade Practices Act for breach of implied warranty. In December 2010, the Barocios filed their *First Amended Petition* and, in February 2011, filed their *Second Amended Petition.* In September 2011, Britt filed its *Motion For Leave To Designate A Responsible Third Party* seeking to designate General Electric, manufacturer of the blower motor, as a responsible third party. In October, the Barocios filed their *Third Amended Petition* seeking to add General Electric as a third-party defendant and adopting Britt's claims and allegations against General Electric. In March 2012, the Barocios filed their *Fourth Amended Petition* stating they "did not give General Electric notice of the product defect prior to naming [General Electric] as a party to [the] lawsuit."

through a unit's blower motor, the breaker is tripped and the homeowner calls someone to fix the air conditioner because the fan is not working. Here, he testified he "couldn't find where the breaker was popped or not."

[2]Rheem sold the system to Britt who, in turn, sold the system to the Barocios. Rheem settled the Barocios' claim and was dismissed from the suit. Rheem is not a party to this appeal.

In 2012, General Electric and Britt filed no-evidence motions for summary judgment. After a hearing, on May 25, 2012, the trial court granted each motion and issued a take-nothing judgment in favor of General Electric and Britt. This appeal followed.

## DISCUSSION

By three issues, the Barocios assert the trial court erred by granting Britt's and General Electric's motions because there was more than a scintilla of evidence establishing a genuine issue of material fact that (1) General Electric's blower motor was defective when it left General Electric's or Britt's possession and (2) that defect was a producing cause of the fire that destroyed the Barocios' home. The Barocios further contend the trial court erred in finding (3) they were required to give General Electric notice under section 2.607(c)(1) of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. § 2.607(c)(1) (West 2008).

### STANDARD OF REVIEW

We review summary judgments *de novo. Ferguson v. Bldg. Materials Corp. of Am.,* 295 S.W.3d 642, 644 (Tex. 2009) (*per curiam*). We consider the summary judgment record in the light most favorable to the nonmovant while indulging every reasonable inference and resolving any doubts against the movant. *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex. 2005). We must affirm summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003).

4

In a no-evidence motion for summary judgment, the movant represents that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i). *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The motion must state the elements as to which the movant claims there is no evidence. The burden then shifts to the nonmovant to produce sufficient summary judgment evidence to raise a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We must sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The evidence is insufficient if "it is so weak as to do no more than create a mere surmise or suspicion" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Field, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

### ISSUES ONE AND TWO:  CAUSATION

To prevail on their implied warranty claim against General Electric and Britt, the Barocios were required to prove that the complained-of acts or omissions were a cause-in-fact of the house fire. *See, e.g., Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 835 (Tex. 2009) (cause-in-fact must be proved to recover for alleged DTPA violations); *Mack Trucks, Inc.*, 206 S.W.3d at 582 (breach of warranty claims require proof of causation-in-fact). To prove causation-in-fact, the plaintiff must establish that

5

the complained-of conduct or condition was "a substantial factor which brings about the injury and without which the injury would not have occurred." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995). That is, the causal connection "must rest in reasonable probabilities; otherwise, the inference that such actually did occur can be no more than speculation or conjecture." *Parker v. Employers Mutual Liability Ins. Co. of Wisc.*, 440 S.W.2d 43, 47 (Tex. 1969).

The Barocios relied on Casey's testimony to establish causation. Casey testified on deposition that the blower motor "*could have possibly* been the cause of the fire" because he concluded the origin point of the fire was in the ceiling area where the system was located, there were no other electrical components or equipment in the area other than the system, and the blower motor was heavily charred and did not turn freely. (Emphasis added). His opinion was based on his training and what he was told by the firemen and others.

Casey agreed with counsel that, in order to determine whether the blower motor caused the fire, one would need a qualified electrical engineer to disassemble the motor and make a technical inspection. He admitted he could not tell whether the blower motor froze before or after the fire started. He also agreed an electrical engineer was necessary to determine whether the motor froze and caused the fire, or whether the fire caused the motor to freeze. He testified he was unable to inspect the fusing system to the blower motor to determine if a short in the motor tripped the breaker, inspect the service wiring running from the breaker box to the blower motor to determine if it was the correct size, or disassemble the blower motor to inspect its bearings and drive shaft.

6

The mere occurrence or damage by an electrical fire is no evidence of a defect in the blower motor. *See Doyle Wilson Homebuilder, Inc. v. Pickens*, 996 S.W.2d 387, 396-97 (Tex. App.—Austin 1999, no pet.). The Barocios' evidence establishes nothing more than the fact that the house was damaged as the result of an electrical fire. There is no evidence the blower motor itself was defective. Instead, Casey testified an inspection by an electrical engineer was necessary to determine whether the damage to the blower motor was caused by a fire or the blower motor itself. Further, while Casey testified that normally an electrical short in the blower motor would trip the breaker box and shut the motor down, there was no way of knowing whether this actually occurred. Neither is there any evidence that the electrical fire was not caused by the installation of wire that was incorrectly sized. Because the system was removed with the exception of the blower motor before Casey arrived, there was no way to tell what gauge wire was running from the breaker box to the blower motor.

Liability cannot turn on speculation or conjecture. *Givens v. M&S Imaging Partners, L.P.,* 200 S.W.3d 735, 738 (Tex. App.—Texarkana 2006, no pet.). *See Natural Gas Pipeline Co. of Am. v. Justiss,* 397 S.W.3d 150, 156-57 (Tex. 2011). "There can be many possible 'causes,' indeed, an infinite number of circumstances can cause an injury." *Parker,* 440 S.W.2d at 47. Here, Casey testified the blower motor *could have possibly* been the cause of the fire and provided no explanation why incorrectly sized wire, a faulty breaker box or improper wiring could not have been the source. "An expert's failure to explain or adequately disprove alternative theories of causation makes his or her own theory speculative and conclusory." *Wal-Mart Stores, Inc. v. Merrell,* 313 S.W.3d 837, 840 (Tex. 2010).

Based on the summary judgment evidence, we conclude the Barocios failed to carry their burden to produce more than a scintilla of probative evidence that the blower motor was defective or any defect in General Electric's blower motor caused the house to burn. *See Mack Trucks, Inc.,* 206 S.W.3d at 582 (burden on nonmovant to present more than a scintilla of probative evidence to raise a genuine issue of material fact). Accordingly, the trial court did not err in granting General Electric's and Britt's no-evidence motion for summary judgment and the Barocios' first and second issues are overruled.

### ISSUE THREE - SECTION 2.607(C)(1) NOTICE

The Barcios' also urge the trial court erred in concluding that section 2.607(c)(1) of the Texas Business and Commerce Code was applicable to their claim against General Electric. In order to maintain an action for breach of warranty, a claimant must notify the seller that a breach occurred within a reasonable time after the breach is discovered or reasonably should have been discovered. Section 2.607(c)(1) states as follows:

> Where a tender has been accepted (1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy.

TEX. BUS. & COM. CODE ANN. § 2.607(c)(1) (West 2008).

Section 2.607(c)(1) requires notification by the buyer to the seller that a breach of warranty has occurred. *Id. See U.S. Tire-Tech, Inc. v. Boeran*, 110 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (section 2.607(c)(1) requires a buyer

8

to notify a remote manufacturer or be barred from recovery) (citing *Wilcox v. Hillcrest Mem'l Park of Dallas*, 696 S.W.2d 423, 424-25 (Tex. App.—Dallas 1985), *writ ref'd n.r.e.*, 701 S.W.2d 842 (Tex. 1996) (*per curiam)*).  Under Rule 54 of the Texas Rules of Civil Procedure, the Barocios were required to prove they provided pre-suit notice to General Electric or notice was not required.  *See U.S. Tire-Tech, Inc.*, 110 S.W.3d at 200 ("The [section 2.607(c)(1)] notice requirement is better described as a condition precedent for a buyer's cause of action."); *Lochinvar Corp. v. Meyers,* 930 S.W.2d 182, 189 (Tex. App.—Dallas 1996, no pet.) (burden of alleging and proving notice under 2.607(c)(1) is properly placed on the buyer).  Commencement of litigation does not satisfy this notice requirement.  *Id.* at 202 (citing *Wilcox*, 696 S.W.2d at 424-25).

Ordinarily, notice is a question of fact to be determined by the trier of fact, however, it becomes a question of law when there is no room for ordinary minds to differ about the proper conclusion to be drawn from the evidence.  *Lochinvar Corp.*, 930 S.W.2d at 190.  Here, although the alleged defect was discovered by the Barocios in January 2009 after Casey issued his report, the Barocios did not seek to make General Electric a party to their suit until October 2011—nearly two years and eight months after the defect was discovered and suit was filed against Rheem and Britt.  Remarkably, approximately three weeks after the fire, Gabriel testified on deposition that he spoke to Rheem in order to put the company on notice there was a fire in his attic where Rheem's system was located.  No pre-suit notice was given to General Electric even though a visual inspection of the motor plainly indicated General Electric was its manufacturer.

9

Under these circumstances, "[i]t would be untenable to allow a buyer, such as [the Barocios], to recover damages for breach of warranty from a remote seller or manufacturer who was never even made aware that the product in question was defective and who, consequently, never had an opportunity to remedy the defect to the buyer's satisfaction before litigation was commenced or even to inspect the product to ascertain if indeed a defect existed." *Wilcox,* 696 S.W.2d at 424-25. We conclude the Barocios failed to provide the required statutory notice to General Electric.[3] *Ibarra v. Nat'l Constr. Rentals, Inc.,* 199 S.W.3d 32, 38 (Tex. App.—San Antonio 2006, no pet.). Consequently, the trial court did not err in granting General Electric's no-evidence motion for summary judgment on the Barocios' implied warranty claim under the DTPA. Appellants' third issue is overruled.

## CONCLUSION

Because the theories presented to the trial court in support of General Electric's and Britt's no-evidence motions for summary judgment are sufficient to support the granting of summary judgment, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

---

[3]The Barocios contend the statutory notice requirement should be excused because, after the fire occurred, notice of the alleged defect would be a useless act. The statute contains no such exception and the Barocios cite no relevant legal authority for this proposition.

10